UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| JOSEPH S. PIGOTT, | ) | CASE NO.: C07-0599-JCC |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| RICHARD MORGAN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

INTRODUCTION

Petitioner Joseph Pigott is a Washington state prisoner who is currently serving a 120-month sentence for assault in the first degree. He has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed an answer, along with the state court record. Petitioner has filed a response to the answer. After considering the parties' submissions and the balance of the record, the Court recommends that the petition be denied with prejudice.

BACKGROUND

The Washington Court of Appeals summarized the facts in petitioner's case as follows:

Pigott and Oscar Muse had known each other for about 10 years. They began

REPORT AND RECOMMENDATION
PAGE -1

as friends, often playing chess together. But, according to Pigott, their relationship became strained due to an unpaid debt stemming from their chess games. In contrast, Muse claims that their friendship ended over a bad business deal.

Although they dispute the course of events, Pigott and Muse eventually ran into each other at an auction and ended up in a van together, where Muse cut off Pigott's dreadlocks. Pigott was very upset because his hair has a cultural significance, and his dreadlocks were a source of honor.

Approximately seven months later, Pigott encountered Muse outside of a Safeway store. Pigott called out to Muse. When Muse walked over to him, Pigott pulled out a gun and pointed it at Muse.

Pigott claims that he pulled the gun out because he feared Muse. Pigott spotted a police car in the parking lot and put the gun behind his back until the officer left. The men had a short conversation, during which Muse reportedly laughed at Pigott and called him a "gunslinger." Pigott fired the gun. Muse threw his hand up. The bullet shattered Muse's wrist and bruised his chest. Muse ran toward the Safeway store and Pigott fired the gun two more times, but neither shot hit Muse.

Several witnesses called 911 to report the shooting. Patricia Glogh called 911 to report that she heard three gunshots, and indicated the possible direction of the shots. Linh Pham, a Safeway employee, called 911 twice. During the first call, he reported that the victim was shot and had run into the store. During the second call, Pham described the victim to the dispatcher. Three witnesses who were in Starbucks, which is located next to Safeway, collectively called 911 and gave a more detailed description of the incident. They said that the two men were initially talking, then one man shot the other. They described Pigott, Muse, and Pigott's car.

Meanwhile, Pigott got into his car, drove home, and put the gun under his son's bed. He then went outside and called 911.

Pigott was charged with attempted murder in the first degree and assault in the first degree, both while armed with a deadly weapon. Pigott admitted shooting Muse, but claims that he did so in self-defense. Pigott testified that, after he pulled the gun on Muse and they had a short conversation, Muse made a movement that looked as if he was reaching for a gun. Pigott claims that he shot Muse to protect himself.

During trial, the State moved to have the court suppress evidence of Pigott's 911 call. The court granted the State's motion. The court admitted evidence of all of the other 911 calls. Glogh and Pham did not testify at trial, but the three witnesses who called 911 from Starbucks testified on behalf of the State.

The jury convicted Pigott of first degree assault with a firearm enhancement. It deadlocked on the attempted murder charge. Pigott moved for a new trial on the assault charge or to dismiss, which the court denied. The court imposed an exceptional sentence below the standard range.

*State v. Pigott*, Unpublished Opinion (Wash. Ct. App. Oct. 24, 2005) (Dkt. #30, Ex. 2).

Petitioner appealed to the Washington Court of Appeals and that court affirmed petitioner's conviction and sentence in an unpublished opinion. (Dkt. #30, Ex. 2). Petitioner filed a petition for review with the Washington Supreme Court and that court denied review. (*Id.*, Ex. 10). The Washington Court of Appeal issued the mandate terminating review of petitioner's case on August 4, 2006. (*Id.*, Ex. 11).

Petitioner filed a personal restraint petition ("PRP") in the Washington Court of Appeals while his direct appeal was pending. (Dkt. #30, Ex. 12). The court stayed the PRP until after it had resolved petitioner's direct appeal. The court then lifted the stay and dismissed the PRP *Id.*, Ex. 14).

On April 26, 2007, petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. #4). Respondent filed his answer on June 15, 2007. (Dkt. #26). Petitioner has filed a response to the answer, and the matter is now ready for review.

## GROUNDS FOR RELIEF

Petitioner sets forth the following grounds for relief in his habeas petition:

1. Insufficiency of the evidence;
2. Ineffective assistance of counsel;
3. Due Process; and
4. Ineffective assistance of appellate counsel.

REPORT AND RECOMMENDATION
PAGE -3

(Dkt. #4 at 6, 7, 9, 10).

## DISCUSSION

### Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's adjudication is *contrary to*, or involved an *unreasonable application* of, clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d) (emphasis added). Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* In addition, a habeas corpus petition may be granted if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d).

In *Lockyer v. Andrade,* 538 U.S. 63 (2003), the Supreme Court examined the meaning of the phrase "unreasonable application of federal law" and corrected an earlier interpretation by the Ninth Circuit which had equated the term with the phrase "clear error." The Court explained:

> These two standards, however, are not the same. *The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness. It is not enough that a federal habeas court, in its "independent review of the legal question" is left with a "firm conviction" that the state court was "erroneous."* . . . [A] federal habeas court may not issue the writ

> simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable.

538 U.S. at 68-69 (emphasis added; citations omitted). Thus, the Supreme Court has directed lower federal courts reviewing habeas petitions to be extremely deferential to decisions by state courts. A state court's decision may be overturned only if the application is "objectively unreasonable." 538 U.S. at 69.

<u>Petitioner's First Ground for Relief: Insufficiency of Evidence</u>

The Washington statute proscribing assault requires that the state show that the accused (1) with intent to inflict great bodily harm, (2) assaults another, (3) with a firearm or other deadly weapon. *See* RCW 9A.36.011(1)(a). In his first ground for relief, petitioner argues that the state failed to prove all of the required elements of first degree assault and that his conviction was therefore not supported by sufficient evidence.

In reviewing a claim based upon sufficiency of the evidence, a federal habeas court must view the evidence in the light most favorable to the prosecution. *See Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990). Review is sharply limited, and the federal court owes great deference to the trier of fact. *Wright v. West* 505 U.S. 277, 296-97 (1992). A conviction may rest exclusively on circumstantial evidence. *See Jeffries v. Blodgett*, 5 F.3d 1180, 1193-94 (9th Cir. 1993). Evidence is sufficient if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Here, viewing the evidence in the light most favorable to the prosecution, a reasonable juror could easily have found sufficient evidence to support petitioner's conviction for first degree

assault. Petitioner admitted shooting the victim but claimed he had acted in self-defense. The state court jury reasonably rejected this claim, based upon the testimony of several eyewitnesses about the shooting and undisputed evidence that the victim was unarmed. Accordingly, the state court decision rejecting this claim is not objectively unreasonable and petitioner's first ground for relief should be denied.

<u>Petitioner's Second Ground for Relief: Ineffective Assistance of Counsel</u>

Claims of ineffectiveness of counsel are reviewed according to the standard announced in *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984). In order to prevail, petitioner must establish two elements: First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Regarding the first prong of the *Strickland* test, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* The test is not whether another lawyer, with the benefit of hindsight, would have acted differently, but whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 689.

In addition, the Supreme Court has stated that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as

01 a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. "The object of an ineffective

02 assistance claim is not to grade counsel's performance. If it is easier to dispose of an ineffective

03 assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so,

04 that course should be followed." *Id.*

05 In his "Brief of Facts in support of Habeas Corpus Petition," petitioner lists fourteen

06 different sub-claims in which he alleges that his trial counsel was ineffective. (Dkt. #4, Attachment

07 #2 at 3-6). The Court addresses each in turn.

08 First, petitioner alleges that counsel failed to bring pretrial motions that petitioner had

09 requested. (*Id.* at 3). These include a motion to dismiss the information, a motion to dismiss

10 based upon prosecutorial misconduct, and a motion to suppress improperly seized evidence. (*Id.*)

11 However, petitioner fails to show that any of these pretrial motions would have likely been

12 granted. Therefore, he fails to show that he was prejudiced by his counsel's decision to not bring

13 these motions. Accordingly, petitioner has not shown prejudice under the *Strickland* standard and

14 this sub-claim should be denied.

15 Petitioner next alleges that counsel was ineffective by failing to prepare properly. (*Id.* at

16 4). This sub-claim may be summarily denied because petitioner fails to support this assertion with

17 any specific instances of how counsel's purported lack of preparation harmed petitioner's case.

18 Petitioner next alleges that counsel was ineffective by "giving an improper jury

19 instruction." (*Id.* at 4). Although unclear, it appears that petitioner is referring to the so-called

20 "Aggressor Instruction" given at trial. Petitioner's contention fails for two reasons. First, the

21 state court found that the prosecutor, not petitioner's counsel, requested the Aggressor

22 Instruction. (Dkt. #30, Ex. 2 at 4). Second, the state court also found that the instruction was

01  properly given because there was credible evidence showing that petitioner had provoked the

02  victim to act in self-defense, by calling out to him and pointing a gun at him. (*Id*). These decisions

03  by the state court are not objectively unreasonable and therefore, this sub-claim should be denied.

04  Petitioner next alleges that counsel was ineffective by failing to call five expert witnesses,

05  including former King County Prosecuting Attorney Norm Maleng, to support petitioner's

06  defense. (Dkt. #4, Attachment #2 at 4). This sub-claim may be summarily denied because

07  petitioner fails to support this assertion with any evidence that the expert witnesses' testimony

08  would have benefitted petitioner.

09  Petitioner next alleges that counsel was ineffective by failing to object to jury instructions.

10  (*Id.*) Petitioner, however, does not specify which instructions were erroneous. Moreover, the

11  state court found that petitioner made no showing that the instructions were inaccurate or did not

12  allow petitioner to argue his theory of the case. (Dkt. #30, Ex. 2 at 3). Indeed, as the state court

13  pointed out, the given instructions allowed counsel to successfully argue that the evidence did not

14  support a verdict of attempted murder. (*Id.*) Accordingly, this sub-claim should be denied.

15  Petitioner next alleges that counsel's opening statement was deficient because it did not

16  present "averments that challenged the prosecutor's bogus charges against Petitioner." (Dkt. #4,

17  Attachment #2 at 4). Petitioner, however, does not describe in any detail the "averments" that

18  counsel should have presented in his opening statement. Accordingly, petitioner does not show

19  prejudice under *Strickland*, and this sub-claim should be denied.

20  Petitioner next alleges that counsel was ineffective by failing to "challenge the

21  [u]nconstitutional sentencing hearing due to lack of evidence to support the verdict of guilt."

22  (Dkt. #4, Attachment #2 at 4). However, as discussed earlier, the evidence was sufficient to

support petitioner's conviction and therefore, petitioner's counsel was not ineffective for failing to challenge the sentencing hearing on this ground.

Petitioner next alleges that counsel was ineffective by failing to obtain a presentence investigation. (Dkt. #4, Attachment #2 at 5). Petitioner cites Superior Court Criminal Rule 7.1(a) to support his assertion that such an investigation was mandatory. However, Rule 7.1(a) states that a "court *may* order that a presentence investigation and report be prepared by the Department of Corrections." Sup. Ct. Cr.R. 7.1(a). Thus, the investigation and report are discretionary. Further, petitioner does not show how a presentence report would have helped him. Accordingly, petitioner does not show prejudice under *Strickland*, and this sub-claim should be denied.

Petitioner next argues that counsel concealed exculpatory evidence and committed cumulative errors that deprived him of a fair trial. (Dkt. #4, Attachment #2 at 5). These sub-claims may be summarily denied because petitioner fails to support his assertions with specific examples of exculpatory evidence or cumulative errors committed by counsel.

Petitioner next argues that counsel was ineffective by failing to challenge the affidavit used by Seattle Police to obtain a search warrant and failing to call a police officer to testify about the "illegal" seizure of petitioner's gun. (Dkt. #4, Attachment #2 at 5). However, petitioner does not show how the affidavit was defective nor how the seizure of his gun was illegal. In addition, such challenges based on the Fourth Amendment are generally not cognizable in a habeas proceeding. *See Stone v. Powell*, 428 U.S. 465, 494 (1976) (holding that federal habeas review of a Fourth Amendment claim is barred unless petitioner can show that he was denied an opportunity for full and fair litigation of that claim at trial and on direct review). Therefore, petitioner's sub-claim related to the seizure of his gun should be denied.

01      Finally, petitioner argues in a conclusory manner that counsel was ineffective by failing to

02 challenge the trial court's Findings of Fact and Conclusions of Law, and by permitting the

03 prosecutor to proceed to trial "when there was no evidence to sustain a trial." (Dkt. #4,

04 Attachment #2 at 5-6). These sub-claims may be summarily denied because petitioner does not

05 support the claims with specific examples of his attorney's deficient actions, nor does he show

06 how he was prejudiced by those actions.

07      Petitioner's Third Ground for Relief: Due Process

08      Under the generic heading, "Due Process," petitioner appears to argue that the trial court,

09 the prosecutor, and his own counsel deprived him of a fair trial through a variety of actions or

10 omissions. (Dkt. #4, Attachment #2 at 2). The Court addresses each allegation in turn.

11      First, petitioner argues that the trial court did not appoint counsel to represent him when

12 he first appeared in court on April 8, 2003,[1] and that this omission impaired his ability to prepare

13 a defense. (Dkt. #4, Attachment #2 at 2). The Supreme Court has held that the right to counsel

14 applies to preliminary hearings if a defendant's rights may be sacrificed or defenses lost at the

15 hearing. *See White v. State of Maryland,* 373 U.S. 59, 60 (1963). However, the right may not

16 apply to an arraignment if that proceeding is not a "critical stage" of the case. *See Baker v. City*

17 *of Blaine*, 221 F.3d 1108, 1110-11 (9th Cir. 2000) (concluding that an arraignment under

18 Washington law was not a critical stage because, although defendant pleaded guilty, he never

19 contested or appealed his conviction and nothing else that occurred at arraignment was material

20 to later trial proceedings).

---

[1] Respondent submits an exhibit that shows that petitioner's first appearance in the state court was on April 10, 2003. (Dkt. #30, Ex. 21 at 1).

REPORT AND RECOMMENDATION
PAGE -10

1  Here, despite petitioner's assertion that lack of counsel hampered his ability to prepare a

2  defense, there is nothing in the record indicating that petitioner was prejudiced by not having his

3  counsel present at his first appearance in state court. *See White,* 373 U.S. at 60. Accordingly, this

4  sub-claim should be denied.

5  Next, petitioner appears to contend that the prosecutor prevented petitioner from

6  presenting evidence that he had a concealed weapon permit at the time of the shooting. (Dkt. #4,

7  Attachment #2 at 2). However, as noted earlier, even if this allegation were true, petitioner does

8  not show how a concealed weapon permit would have exonerated him of any of the charges.

9  Next, petitioner makes a series of allegations against his trial counsel: counsel denied him

10 his right to a speedy trial, counsel did not present petitioner with an unidentified "checklist as

11 required by the court," and counsel did not visit petitioner in jail or show him any discovery. (Dkt.

12 #4, Attachment #2 at 2). Petitioner fails to support these allegations with any specific facts or

13 show exactly how he was prejudiced by these actions. Accordingly, this sub-claim should be

14 denied.

15 Finally, petitioner makes a series of allegations against the trial court: the court did not

16 permit him to object to jury instructions, the court improperly denied his request to proceed *pro*

17 *se*, the court did not order a presentence investigation, and the court "signed a judgment and

18 sentence in Bad Faith." (Dkt. #4, Attachment #2 at 2-3). However, these allegations either lack

19 support or have been previously addressed in this Report and Recommendation. Accordingly,

20 these sub-claims should be denied.

21 <u>Petitioner's Fourth Ground for Relief: Ineffective Assistance of Appellate Counsel</u>

22 In his final ground for relief, petitioner argues that his appellate counsel was ineffective.

REPORT AND RECOMMENDATION
PAGE -11

01 Petitioner argues that appellate counsel was ineffective because counsel failed to order a complete
02 trial transcript and failed to raise several issues on appeal. (Dkt. #4, Attachment #2 at 6). The
03 Court addresses each sub-claim in turn.

04 Claims of ineffective assistance of appellate counsel are reviewed under the same two-
05 prong standard articulated in *Strickland*. *See Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000).
06 Here, petitioner fails to show that he was prejudiced by appellate counsel's failure to order a
07 complete transcript. Accordingly, he fails to meet the prejudice prong of *Strickland* and this sub-
08 claim should be denied.

09 Next, petitioner contends that his appellate counsel should have raised the following issues
10 on appeal: sufficiency of the evidence, petitioner's actual innocence, and prosecutorial misconduct
11 in concealing exculpatory evidence. (Dkt. #4, Attachment #2 at 6). Petitioner's contention should
12 be rejected. First, the Supreme Court has held that appellate counsel has no constitutional
13 obligation to raise every issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-
14 54 (1983); *Gustave v. United States,* 627 F.2d 901, 906 (9th Cir. 1980) (holding hat to be
15 constitutionally effective, "[c]ounsel need not appeal every possible question of law . . . .").
16 Second, petitioner fails to show that he was prejudiced by counsel's failure to raise these issues,
17 as he does not show that they had merit. Accordingly, petitioner's final ground for relief should
18 be denied.

19 / / /
20 / / /
21 / / /
22 / / /

## CONCLUSION

For the foregoing reasons, petitioner's petition for a writ of habeas corpus should be denied with prejudice. A proposed Order reflecting this recommendation is attached.

DATED this 25th day of July, 2007.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -13